# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * *
SHANNON MERCER,                    *
                                   *      No. 17-1544V
                Petitioner,        *      Special Master Christian J. Moran
                                   *
v.                                 *
                                   *      Filed: December 20, 2021
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *      attorneys' fees and costs;
                                   *      reasonable basis
                Respondent.        *
* * * * * * * * * * * * * * * * * * * * *
```

Ronald C. Homer and Lauren Faga, Conway, Homer, P.C., Boston, MA, for petitioner;

Debra A. Filteau Begley, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

Represented by Attorney Lauren Faga, Shannon Mercer alleged that an influenza ("flu") vaccination she received on October 20, 2014, caused her to suffer Bell's palsy and sensory neuropathy. After she was unable to retain an expert to opine on her case, Ms. Mercer moved for a decision dismissing her petition. A decision dismissing her petition was subsequently issued. Mercer v. Sec'y of Health & Hum. Servs., 2020 WL 571493 (Fed. Cl. Spec. Mstr. Jan. 7, 2020).

Ms. Mercer filed a motion for attorneys' fees and costs on April 8, 2020, arguing that she is eligible to receive attorneys' fees and costs as the Vaccine Act permits. Pet'r's Mot., filed Apr. 8, 2020. The parties filed rounds of briefs on the

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website. Anyone will be able to access this decision via the internet (https://www.uscfc.uscourts.gov/aggregator/sources/7). Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website

question whether reasonable basis supports the claims set forth in Ms. Mercer's petition and an oral argument was held on October 7, 2021.

Ms. Mercer does not qualify for an award of attorneys' fees. She has not established a reasonable basis for the assertion that her sensory neuropathy lasted for more than six months. Second, she has failed to establish a reasonable basis for the assertion that the flu vaccine caused her to suffer sensory neuropathy. Thus, her motion is DENIED.

## I.   <u>Procedural History</u>

Ms. Mercer's case has proceeded through two phases, the entitlement phase and the attorneys' fees and costs phase.

### A.   **Entitlement Phase**

Ms. Mercer alleged that she suffered from Bell's palsy and sensory neuropathy as a result of a flu vaccination she received on October 20, 2014. Pet., filed Oct. 17, 2017. After Ms. Mercer filed medical records over the course of several months, the record was complete. Resp't's Status Rep., filed Aug. 3, 2018.

The Secretary recommended against an award of compensation, arguing that Ms. Mercer had not shown that she experienced sequela of her Bell's palsy for more than six months. Resp't's Rep., filed Sept. 20, 2018, at 6. To support this contention, the Secretary stated that the evidence showed that Ms. Mercer's symptoms persisted for two months at most, given that the last mention of Bell's palsy symptoms was on December 3, 2014, and that Ms. Mercer reported resolution of her symptoms by December 12, 2014. Id. at 6-7; see also exhibit 12 at 49, 131, 133. The Secretary also argued that Ms. Mercer had not shown that her Bell's palsy or sensory neuropathy was caused-in-fact by her flu vaccination. Resp't's Rep. at 8. To support this contention, the Secretary pointed to the lack of support for causation from Ms. Mercer's treating doctors, as well as a treating doctor's opinion that her symptoms represented evidence of cervical radiculopathy, not Bell's palsy or sensory neuropathy. Id.; see also exhibit 12 at 43.

The undersigned then ordered Ms. Mercer to file an affidavit answering questions relevant to the issues raised in the Rule 4(c) report. Ms. Mercer filed this affidavit on November 9, 2018. The parties engaged in settlement discussions, which eventually concluded without a resolution on May 28, 2019. Resp't's Status Rep., filed May 28, 2019.

Ms. Mercer attempted to retain an expert to opine on her case.  However, she was unable to find an expert and moved for a decision dismissing her petition on December 19, 2019.  In this motion, Ms. Mercer stated that she "has been unable to secure further evidence required by the Court to prove entitlement to compensation."  Pet'r's Mot. ¶ 1.  The undersigned issued a decision dismissing the petition on January 7, 2020.  2020 WL 571493.

**B.     Attorneys' Fees and Costs Phase**

After judgment entered, Ms. Mercer filed a motion for attorneys' fees and costs.  However, she did not explain why she meets the reasonable basis standard for either causation or severity of illness.  The Secretary responded to petitioner's motion without analyzing the issue of reasonable basis, stating that "[r]espondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  Resp't's Resp., filed Apr. 22, 2020, at 2.  The undersigned then ordered the parties to brief the issue of reasonable basis.  Order, issued Aug. 21, 2020.

Ms. Mercer submitted her brief on September 18, 2020; respondent submitted his response on November 10, 2020; and petitioner submitted her reply on December 8, 2020.  Adjudication of Ms. Mercer's motion was deferred while the Federal Circuit considered the factors contributing to an analysis of reasonable basis.  The Federal Circuit provided additional guidance in <u>Cottingham v. Secretary of Health & Human Services</u>, 971 F.3d 1337 (Fed. Cir. 2020).  The Federal Circuit then issued another decision regarding the reasonable basis standard in <u>James-Cornelius v. Secretary of Health & Human Services</u>, 984 F.3d 1374 (Fed. Cir. 2021).  The parties were afforded the opportunity to submit additional briefs in light of these recent decisions.  The parties submitted supplemental briefs maintaining their positions on March 8, 2021, and April 7, 2021.

An oral argument was held on October 7, 2021.  In the oral argument, Ms. Mercer narrowed her argument considerably.  While Ms. Mercer previously asserted that she possessed a reasonable basis to assert the claim that the flu vaccine caused her to suffer Bell's palsy and the Bell's palsy lasted more than six months, Ms. Mercer stated that her argument regarding reasonable basis rested only on the peripheral neuropathy claim.  Tr. 5 (Ms. Faga: "[O]ur claim for reasonable basis relies on a second alleged injury of the sensory neuropathy."), 77 (Ms. Faga: "Our claim for reasonable basis in this case is based off of her injury for sensory neuropathy alone.").  In addition, both parties resolutely opposed a hearing to obtain more evidence.  Thus, the matter is ready for adjudication.

II.    **Summary of Evidence Regarding Peripheral Neuropathy**

Ms. Mercer received a flu vaccine on October 20, 2014, when she was 46 years old.  Exhibit 1 at 1.  Approximately one month later, Ms. Mercer informed her primary care doctor, Dr. Mason-Zied, that she was experiencing numbness in her lips, a muscle on the right side of her face twitched, and her ability to raise her right eyebrow and smile was decreased.  Exhibit 12 at 132-33 (Nov. 25, 2014). When Dr. Mason-Zied examined Ms. Mercer, Ms. Mercer denied any symptoms in her arms.  Id.; see also Tr. 8.  Dr. Mason-Zied diagnosed Ms. Mercer with Bell's palsy and prescribed a twelve-day course of steroids.[2]  Dr. Mason-Zied also stated that Ms. Mercer should be allowed to miss work until December 1, 2014.  Exhibit 12 at 132-33.

Ms. Mercer returned to Dr. Mason-Zied on December 3, 2014.  Ms. Mercer stated that she was better, and she could keep her eyes closed.  Dr. Mason-Zied assessed Ms. Mercer as having "neuropathy [secondary] to Bell's palsy."  Exhibit 12 at 131.

The parties, as discussed below, differ in their interpretation of Dr. Mason-Zied's notation "neuropathy [secondary] to Bell's palsy."  In short, the Secretary maintains that the neuropathy is limited to Ms. Mercer's face.  But, Ms. Mercer argues that the "neuropathy" to which Dr. Mason-Zied refers is a peripheral neuropathy.

Ms. Mercer buttresses her contention by relying upon two documents created during this litigation, years after the December 3, 2014 appointment.  First, Ms. Mercer attested in an affidavit, "Around Christmas, the paralysis in my face improved, but I continued to feel very weak and had pain and numbness in my fingers and toes.  It took several months until I felt more like normal, but I still had numbness and pain in my hands and feet."  Exhibit 7 (affidavit, signed Oct. 16, 2017) ¶ 4.  In another affidavit, Ms. Mercer also stated that she missed three weeks of work.  Exhibit 10 (affidavit, signed Nov. 6, 2017) ¶ 8.

Second, Dr. Mason-Zied wrote a short "To whom it may concern" letter on July 27, 2019.  Dr. Mason-Zied stated Ms. Mercer "sought medical attention in December 2014 due to sudden onset of numbness/weakness on the right side of her

---

[2] Thus, she would have presumably finished this treatment course in mid-December and Ms. Mercer admits in her affidavit that her Bell's palsy symptoms resolved in December 2014. Exhibit 7 ¶ 4 ("Around Christmas, the paralysis in my face improved . . . .").

face.  At that time she was also experiencing neuropathic symptoms in her hands and feet."  Exhibit 16.

In any event, Ms. Mercer continued to perform her duties at her job.  See exhibit 13 (employment records), especially pages 289-91.  Between January 2015 and March 2015, Ms. Mercer did not seek other medical attention.

Ms. Mercer's next appointment with a medical professional occurred on March 10, 2015.  Ms. Mercer informed Dr. Mason-Zied that she was having numbness in her hands, dizziness, headaches, and increased blood pressure.  Exhibit 12 at 130.  The medical record contains no information about when these problems began.  Although Ms. Mercer was concerned that she might be suffering from multiple sclerosis, she declined further workup, such as Dr. Mason-Zied's recommendation for an EMG.  Id.  Ms. Mercer reported numbness in her hands again at an appointment on May 20, 2015, without stating when the numbness began.  Id. at 129.  Ms. Mercer was "not interested in further eval[uation]."  Id.

Later in 2015, after she received another flu vaccine on October 2, 2015, Ms. Mercer reported that her lips and tongue began tingling.  Exhibit 2 at 127 (October 9, 2015 appointment).  Dr. Mason-Zied characterized this as "numbness [secondary] to flu shot" and prescribed a steroid.  Id.

More than a year later, on May 2, 2017, Ms. Mercer reported to Dr. Mason-Zied "numbness and tingling in upper extremities."  Exhibit 12 at 57.  She also reported that these problems "started [a] couple of [years] ago."  Id.

Ms. Mercer consulted a neurologist, Dr. Ling, on May 15, 2017.  Exhibit 12 at 49-51.  At this appointment, she attributed her symptoms to her Bell's palsy following her October 2014 vaccination.  She reported that following the October 2014 vaccination, she had facial numbness, which resolved.  After her October 2015 vaccination, she experienced tingling in her left arm, hands, chest, and face, which also resolved after an oral steroid.  Id. at 49.  For her most recent symptoms, Ms. Mercer reported that in the last week, she developed numbness in her hands, arms, chest, and face.  Dr. Ling's examination was essentially normal, and he did not identify any sensory deficits.  Id. at 52.  Dr. Ling assessed Ms. Mercer with an adjustment disorder and ordered an MRI for her cervical spine and an EMG.

The MRI revealed that Ms. Mercer had degenerative disc disease at C5-6 and stenosis at C4-5.  Exhibit 11 at 6 (May 19, 2017).  The EMG showed a focal sensory neuropathy of the medial nerve in the left arm, and changes that could be "focal muscle atrophy related."  Exhibit 12 at 45 (May 24, 2017).

After reviewing these studies, Dr. Ling diagnosed Ms. Mercer as suffering from degenerative disc disease and cervical radiculopathy. Exhibit 12 at 43. Dr. Ling's diagnoses contribute to the parties' debate over the reasonable basis for the claim that the flu vaccine caused Ms. Mercer to suffer a peripheral neuropathy.

## III.   Standards for Adjudication

Petitioners who have not been awarded compensation (like Ms. Mercer here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1). As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 635 (Fed. Cir. 2017). Here, the Secretary has not raised a challenge to Ms. Mercer's good faith. Thus, the disputed issue is reasonable basis.

In Cottingham, the Federal Circuit stated that the evidentiary burden for meeting the reasonable basis standard "is lower than the preponderant evidence standard." 971 F.3d at 1346. Something "more than a mere scintilla" might establish the reasonable basis standard. Id. at 1356. Petitioners meet their evidentiary burden with "objective evidence." Id. at 1344. In categorizing medical records as objective evidence, the Federal Circuit stated, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." Id. at 1346. Finally, the Federal Circuit in Cottingham specified that "[w]e make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court." Id. at 1347.

In its most recent opinion regarding the reasonable basis standard, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. James-Cornelius, 984 F.3d at 1379-81. The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis, especially when the case is in its early stages and counsel may not have had the opportunity to retain qualified experts." Id. at 1379 (citing Cottingham, 971 F.3d at 1346). These two most recent decisions guide the analysis regarding what types of evidence constitute objective evidence of reasonable basis, as originally articulated in Simmons, though the ultimate weighing of such evidence is left up to the special master.

IV.   **Analysis**

A critical question is whether Ms. Mercer experienced numbness in her hands in December 2014. In conjunction with a motion for attorneys' fees and costs, Ms. Mercer is not required to present preponderant evidence on this point. Instead, she bears the burden of submitting sufficient objective evidence that would support a finding that her assertion that she suffered a peripheral neuropathy from a flu vaccine was supported by reasonable basis.

The strongest evidence regarding Ms. Mercer's health in November and December 2014 is the set of records Dr. Mason-Zied created in November and December 2014. Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993) (crediting medical record evidence over a petitioner's contradictory testimony and stating "[m]edical records, in general, warrant consideration as trustworthy evidence . . . With proper treatment hanging in the balance, accuracy has an extra premium."). In Dr. Mason-Zied's earlier record, she documented Ms. Mercer was having problems in her face and that Ms. Mercer was not having trouble in her arms. Exhibit 12 at 132-33 (Nov. 25, 2014). In the follow-up appointment, Dr. Mason-Zied recorded Ms. Mercer's improvement in problems in her face. Id. at 131. Dr. Mason-Zied did not write that Ms. Mercer was having numbness in her hands or feet in the December 3, 2014 medical record. See Tr. 9 (Ms. Filteau-Begley: "There's no assessment of fingers, toes, arms, legs" in the December 3, 2014 medical record).

Dr. Mason-Zied's assessment was "neuropathy [secondary] to Bell's palsy." Exhibit 12 at 131. A natural reading of this record is that Ms. Mercer was having problems in the nerves located in her face. Nothing in Dr. Mason-Zied's November 25, 2014 medical record or her December 3, 2014 medical record suggests that nerve problems extended beyond Ms. Mercer's face into her periphery. Actually, Dr. Mason-Zied's determination that Ms. Mercer was not having problems in her arms on November 25, 2014 constitutes affirmative evidence weighing against a finding of peripheral neuropathy.

Some additional evidence about Ms. Mercer's health in December 2014 comes from her employment records. These records show that Ms. Mercer continued to work. Exhibit 13. A fair inference from the employment records is that any health problem did not incapacitate her. However, the overall value of the employment records is relatively small as Ms. Mercer could have been experiencing a low-level health problem but remained capable of doing her job. See exhibit 15 (petitioner's affidavit, signed Oct. 15, 2018) ¶ 10.

The employment records are more meaningful for their conflict with Ms. Mercer's affidavit regarding damages.  Ms. Mercer attested that she "missed approximately three (3) weeks of work."  Exhibit 10 (affidavit, signed Nov. 6, 2017) ¶ 8.  While this assertion was an estimate, the employment records show that she worked at least 40 hours a week in all but one week after her vaccination on October 20, 2014 (and in that one other week, she worked 32 hours).  Exhibit 13 at 290.  In this conflict, the employment records are almost certainly accurate due to the Department of Labor's requirement to keep accurate records.  See 29 C.F.R. pt. 516.[3]  It is much more likely that Ms. Mercer's recollection about missing approximately three weeks of work approximately three years earlier is not accurate.

The question about the accuracy of Ms. Mercer's memory of events, in turn, surfaces again when considering Ms. Mercer's slightly earlier affidavit.  On October 16, 2017, Ms. Mercer attested, "Around Christmas, the paralysis in my face improved, but I continued to feel very weak and had pain and numbness in my fingers and toes."  Exhibit 7 (affidavit, signed Oct. 16, 2017) ¶ 4.  To be clear, Ms. Mercer's testimonial assertions about when she experienced certain problems constitute a form of objective evidence, relevant to determining whether Ms. Mercer's claim was supported by reasonable basis.  James-Cornelius, 984 F.3d at 1379-81.  Ms. Mercer argues that her affidavit testimony constitutes objective evidence of the onset and severity of her symptoms.  See Pet'r's Br., filed Mar. 8, 2021, at 5.  An affidavit, however, does not necessarily mean that a petitioner has reasonable basis for each element of petitioner's case.  See Goodgame v. Sec'y of Health & Hum. Servs., No. 17-339V, 2021 WL 5365635 (Fed. Cl. Oct. 29, 2021) (ruling that a special master's decision that petitioner lacked a reasonable basis to assert her injury lasted more than six months was not arbitrary despite petitioner's affidavit).

While James-Cornelius directed special masters to consider assertions in affidavits about which an affiant has first-hand information, James-Cornelius did not require special masters to accept assertions automatically.  Instead, James-Cornelius expected that the special master would evaluate the evidence on remand.

An evaluation of the evidence relevant to reasonable basis is consistent with the earliest binding precedent on reasonable basis, Perreira v. Secretary of Health & Human Services, 33 F.3d 1375 (Fed. Cir. 1994).  There, the special master

---

[3] Although the employer noted that "Due to an update in the database systems in the year 2015, a complete set of records prior to January 01, 2015 cannot be provided," exhibit 13 at 293, the employer did provide some records showing Ms. Mercer's employment after the vaccination.

found the opinion of petitioners' expert "unsupported."  Id. at 1377.  This characterization of petitioners' evidence implies that the special master did not simply look at the face of the expert opinion.  Instead, it appears that the special master compared that evidence to the remaining evidence in the record to determine that it was "unsupported."  Because the expert's opinion was "unsupported," the special master was not arbitrary in finding that the petitioners in Perreira lacked a reasonable basis to proceed to a hearing.  Id.

"Unsupported" is also an accurate description of Dr. Mason-Zied's July 27, 2019 assertion that in December 2014, Ms. Mercer was "experiencing neuropathic symptoms in her hands and feet." Exhibit 16.  Dr. Mason-Zied does not address how she can recall, nearly five years later, how Ms. Mercer presented in December 2014.  See Milik v. Sec'y of Health & Hum. Servs., 822 F.3d 1367, 1380-81 (Fed. Cir. 2016) (ruling that the special master was not arbitrary in not crediting a treating doctor's clarification of a medical record the doctor created 16 years earlier); Frette v. Sec'y of Health & Hum. Servs., No. 14-1105V, 2017 WL 7421013, at *15 (Fed. Cl. Spec. Mstr. Dec. 29, 2017) (declining to credit a letter from a treating doctor about his memory of events occurring two years earlier that were not reflected in his medical records).  Dr. Mason-Zied also does not explain why, if Ms. Mercer complained about neuropathic symptoms in her hands and feet in December 2014, she (Dr. Mason-Zied) did not document that complaint.  The assertion that Ms. Mercer told Dr. Mason-Zied about neuropathic symptoms in December 2014 is inconsistent with how Dr. Mason-Zied responded to complaints of numbness in her hands, among other problems, in March 2015.  Then, when Ms. Mercer talked about those symptoms, Dr. Mason-Zied attempted to evaluate the complaints with an EMG but Ms. Mercer denied any follow up.  See exhibit 12 at 130.  A similar pattern occurred in May 2015, when Dr. Mason-Zied again sought to investigate the nature of Ms. Mercer's reports of numbness.  Exhibit 12 at 129.

In short, Ms. Mercer has not presented a sufficient quantum of objective evidence to support the assertion that she experienced numbness in any extremity in December 2014 with reasonable basis.  She did submit some evidence (namely, her October 16, 2017 affidavit and Dr. Mason-Zied's July 29, 2019 letter).  However, the evidence, considered as a whole, does not rise to the level to support a reasonable basis.

Without a reasonable basis for asserting that Ms. Mercer experienced numbness in her arms or legs in December 2014, the petition's claim that she developed peripheral neuropathy due to the October 20, 2014 flu vaccination falls short of the reasonable basis standard as well.  As the Secretary argued (Tr. 14), without knowing the onset of an alleged peripheral neuropathy finding that there is

objective evidence to support causation is difficult.  The amount of time between the vaccination (October 20, 2014) and when Ms. Mercer first reported numbness in her hands to Dr. Mason-Zied (March 10, 2015) is more than four months. Special masters have found that four months is too lengthy an amount of time for which an inference of causation is appropriate.  See, e.g., Caron v. Sec'y of Health & Hum. Servs., No. 15-777V, 2017 WL 4349189, at *10 (Fed. Cl. Spec. Mstr. Sep. 7, 2017) (rejecting a five-month interval in the context of multiple vaccines and the onset of a form of osteomyelitis), mot. for rev. denied, 136 Fed. Cl. 360, 389-90 (2018).  In fact, special masters tend to draw a line at a two-month onset.  See Conte v. Sec'y of Health & Hum. Servs., No. 17-403V, 2020 WL 5743696, at *26 (Fed. Cl. Spec. Mstr. July 27, 2020) (rejecting a twelve-week onset in a flu-CIDP case and remarking that eight weeks appears to be the maximum onset time frame deemed reasonable in the Vaccine Program).  While Dr. Mason-Zied's March 10, 2015 medical record does not necessarily mark when Ms. Mercer began to experience numbness in her hands, the lack of clear information about the beginning of numbness in her hands simply highlights the overall lack of objective evidence.

Moreover, during the treating doctors' course of caring for Ms. Mercer, they did not diagnose Ms. Mercer as suffering from a peripheral neuropathy.  This lack of diagnosis is another weakness in Ms. Mercer's case because to receive compensation, a petitioner must establish with preponderant evidence that she suffers from the condition that the vaccination allegedly caused.  Broekelschen v. Sec'y of Health and Hum. Servs., 618 F.3d 1339, 1346 (Fed. Cir. 2010); see also Tr. 49-52.  Here, not only is there an absence of a contemporaneously created diagnosis of peripheral neuropathy, there are also two different diagnoses: degenerative disc disease and cervical radiculopathy that Dr. Ling made in 2017. Exhibit 12 at 43.  This alternative explanation for the numbness about which Ms. Mercer first complained in March 2015 weakens Ms. Mercer's assertion that she suffered from peripheral neuropathy.  Additionally, Dr. Ling stated that there was "no EMG evidence of generalized large fiber peripheral neuropathy." Id. at 45. While the reasonable basis standard is less than the preponderance of evidence standard, and, therefore, more easily satisfied, Ms. Mercer lacks a reasonable basis for asserting that she suffered from a peripheral neuropathy.

Given that no treating doctor diagnosed Ms. Mercer with a peripheral neuropathy, it, therefore, follows that no treating doctor stated that the flu vaccination caused any peripheral neuropathy in Ms. Mercer.  Ms. Mercer also did not present the report from an expert retained in the litigation.  While the lack of expert or treater support is not dispositive to the determination of reasonable basis,

see James-Cornelius, 984 F.3d at 1379, there is a dearth of evidence regarding causation.  Ms. Mercer's strongest evidence regarding causation is Dr. Mason-Zied's letter that Ms. Mercer should not receive future flu vaccinations and various notes in medical records listing Fluzone as an allergy.  Tr. 49; see also exhibit 5 at 12; exhibit 12 at 44, 127.  However, Ms. Mercer has not clarified whether Dr. Mason-Zied could have exempted Ms. Mercer from future flu vaccinations due to the Bell's palsy, which is not the basis for Ms. Mercer's argument regarding reasonable basis.

The listing of a flu vaccine allergy is similarly ambiguous.  The notation appears in the context of Ms. Mercer's history, suggesting that Ms. Mercer (and not a doctor) determined that she was allergic to the flu vaccine.  Ms. Mercer's assessment about having an adverse reaction carries little, if any, weight in determining the reasonable basis for her assertion that the flu vaccine harmed her.  See Solak v. Sec'y of Health & Hum. Servs., No. 14-869V, 2020 WL 9173158, at *33 (Fed. Cl. Spec. Mstr. Feb. 19, 2020) (in the context of determining entitlement, the special master gave little weight to a treater's report of an allergy that appeared to come from petitioner's history).  For these reasons, Ms. Mercer has not provided sufficient evidence to a show a reasonable basis for her claim that the flu vaccine caused her to suffer a peripheral neuropathy.

The finding that Ms. Mercer has not provided sufficient evidence to support reasonable basis is based upon the entire record.  This finding, necessarily, does not include information that could have been obtained at a hearing.  During the oral argument, the Secretary noted that multiple pieces of evidence contain gaps, reducing the value of that evidence.  For example, with respect to Dr. Mason-Zied's July 27, 2019 letter, the Secretary maintained that the face of the letter did not present foundational elements useful to assessing the letter's reliability.  Tr. 34-38.  But, when asked to explain why Dr. Mason-Zied's letter was reliable, Ms. Mercer did not directly answer the question, responding that her December 3, 2014 medical record found in exhibit 2 was enough to establish the reasonable basis for the claim that the flu vaccine caused peripheral neuropathy.  Tr. 32.

At a hearing, Dr. Mason-Zied could have been asked to explain her December 3, 2014 record, in which Dr. Mason-Zied stated that Ms. Mercer suffered a "neuropathy."  For the reasons discussed above, the interpretation that is more consistent with Dr. Mason-Zied's medical records created in 2014 is that Dr. Mason-Zied was referring to a problem in Ms. Mercer's facial nerves, not any peripheral nerves.  Similarly, under-oath testimony from Dr. Mason-Zied could have shed some light on Dr. Mason-Zied's basis for recommending against flu vaccinations.  See exhibit 5 at 12.  And yet, when the possibility of a conducting a

hearing was raised with Ms. Mercer, Ms. Mercer strongly opposed obtaining more evidence.  Tr. 58-63.  The Secretary, too, resisted the notion of obtaining additional evidence.  Tr. 63-72.

Because both parties have had an opportunity to present their evidence, a hearing is not required.  See Vaccine Rule 3(b)(2).  Because Ms. Mercer, the party with the burden of proving that reasonable basis supports the claim set forth in her petition (McKellar v. Sec'y of Health & Hum. Servs., 101 Fed. Cl. 297, 305 (2011)), argued against having a hearing, the undersigned will not schedule one. "A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

## V.   **Conclusion**

Ms. Mercer's eligibility for an award of attorneys' fees and costs depends upon her establishing a reasonable basis for the claim set forth in the petition. While the reasonable basis standard is easier to satisfy than the preponderance of the evidence standard, Ms. Mercer has failed to present sufficient objective evidence that would ground a finding of reasonable basis that her flu vaccination caused her to suffer a peripheral neuropathy.  Accordingly, Ms. Mercer's motion for an award of attorneys' fees and costs is DENIED.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master